Case number 23-3208, et al., United States of America v. Casey Cusick, Appellants. Mr. Roots for the Appellant, Mr. Dietrich Hill for the Appellee. Good morning. Thank you so much, Your Honors. May it please this Honorable Court, my name is Roger Roots and I represent the Appellants in this case, Mr. James Cusick and Casey Cusick. The Cusicks, I should say they are father and son, James is the father of Casey. They are January Sixers. They are among the hundreds of defendants who have been prosecuted for essentially going inside the U.S. Capitol on January 6, 2021. And I note that this Court of Appeals has addressed a couple very, very similar cases. In particular, these are cases involving what we call the four standard misdemeanors. Hundreds of people have been prosecuted for these four standard misdemeanors. Count one is always entering and remaining in a restricted area. Count two is disorderly conduct in a restricted area. Count three is always, involves the statutes relating to the U.S. Capitol, so disorderly conduct inside the U.S. Capitol. And then there's count four, which is picketing and or parading inside the U.S. Capitol. This Court of Appeals has previously dealt with two very similar cases that I want to point out. First, the Nassif case. The Nassif case was essentially a First Amendment challenge to count four, and that's that picketing and parading statute. The Court of Appeals upheld Nassif's conviction. Then there was the Alford case, also involved the four standard misdemeanors. Alford challenged variations of what has become known as the raindrop theory, the idea that disorderly conduct can be simply being inside the Capitol without doing much more. In this case, the Cusick case, I submit, involves the most innocent people yet. In other words, the Cusicks, unlike Alford and unlike Nassif, did even less than either Nassif or Alford. Alford didn't do much, but he did trigger an alarm. He did try to push open a door, things like that. Nassif, of course, did chant, and he made noise and shouted and things. Can I confirm with you, your argument is a challenge to the sufficiency of the indictment, not a challenge to the sufficiency of the evidence. Is that right? I believe we're challenging both. Well, your brief seems to challenge the indictment. It refers to the indictment as the ‑‑ I'm sorry, it keeps referring to Judge Bates's opinion that denied the pretrial motion that said that there was insufficient probable cause to support the indictment. Yes, yes. And so if you're challenging the sufficiency of the indictment, these arguments that you're making now are not really relevant. Well, we're making a number of challenges, obviously. Where is your sufficiency of the evidence argument in your opening brief? It's in there. We don't emphasize that. I'm on emphasis. Just tell me where it is. You don't have to emphasize it. Well, I do know that we bring that up. Let me just see here. Let me just see if I can. I guess at heart I could sum up that we're making a couple of different challenges to several issues. You clearly have the First Amendment claims. Yes. You got that. And the other one, I had read your brief the same way as Judge Pan, and that was that you were challenging the information in this case, in particular district court's refusal to dismiss based on your argument that the information was insufficient to state criminal count against your clients. Is that understanding correct? Yes, we do make that challenge in this way. The accusics were accused of committing these four crimes essentially by being there. And that goes to the heart of all that we know about criminal prosecution. The most fundamental jury instruction in every jury trial is an instruction that says that an individual must be judged. But a challenge to the sufficiency of the information. Thank you. It's an information, not an indictment. It's the charging document. And the charging document in this case just laid out what they allegedly did on those days by mostly using the statutory language. And there's precedent saying that that's a sufficient information. That's a sufficient charging document. So if you're challenging the charging document, it's a different analysis from what you're making at the podium. We're just looking at what does the information say, and is it sufficient to put the defendant on notice of what the charges are. And the information in this case is very consistent with others that we have upheld in the past. Sure. I'll just say that in this case, there's an overarching First Amendment aspect to this. This was at the U.S. Capitol where the U.S. Congress is meeting. No, I understand. Your First Amendment claim we can discuss, and I think we can. But just focusing first on your theory about the raindrop theory, that seems to me to be a challenge to the sufficiency of the evidence at the trial. It's not a challenge to the sufficiency of the information, which is what you're making. Sure. Yeah. I would say the information, though, was worded in such a way that it would apply to completely innocent behavior, which cannot be a crime. And so that was the basis of that challenge. Well, the information just charges the defendants with knowingly and with intent to impede and disrupt the orderly conduct of the government business, et cetera, for engaging in disorderly and disruptive conduct. It alleges what the government thinks they did. And that is not innocent conduct, is it? No, it's not. But let me just say that in the context of the entire information, it has to be read with this notion that essentially they were committing these crimes by being there. Well, by being somewhere that they were not lawfully allowed to be. I think that's we have to start with that. We can't just say they were just there. They were there where they were not lawfully authorized to be. So that's not perfectly innocent conduct.  Let's put it this way. We agree that they were not lawfully authorized to be there. Do we not? I believe they, certainly the evidence did not substantiate that. This goes to the submission. The evidence didn't substantiate what? It did not substantiate that they were notified properly that they weren't supposed to be there. Oh, really? When they see people pushing past lines of officers, when they see pepper spray and fencing and everything else pushed down, there wasn't sufficient evidence for a rational jury taking everything in the light most favorable to the government to reasonably find that there was evidence that they weren't supposed to be there. That's your argument? The evidence was very clear. Jim and Casey Cusick walked through an open door. They essentially were following the crowd. They had interest in what the crowd was doing. They went past two area closed signs and by officers in riot gear and toppled barricades. That was the evidence. Would that not alert a reasonable person that perhaps they're not supposed to be there? There's a lot of video in this, and it did not show that they walked past or through. They did not pass a barrier that was directly in front of them. There was evidence that they went past barriers. They went past toppled barricades, broken glass, alarms going off, and officers fighting against protesters. I guess I'm struggling. I don't want to speak for my colleagues. We're struggling with how that was not evidence that they were in a place they were not supposed to be. I have to confess the memory of the trial is over a year ago, but I don't believe there was evidence that these particular appellants saw fighting with officers. There's evidence that one of your clients made a remark, we need to hurry up because I don't want to get hit in the head by a billy club. Remember that evidence? I don't really remember that. I do recall some statements sort of, hey, there's some pepper spray. I believe Casey— Another good sign that they're in a place they're not supposed to be then. Well, it's certainly evidence of something. Let's put it this way. No, no, no. It's not evidence of something. It's whether a reasonable jury could conclude that that's evidence that they knew they were someplace they weren't supposed to be. Well, is that the case? If I see pepper spray over here, does that mean that I know I'm not supposed to be here? Pepper spray is going off. If you're afraid of getting hit in the head with a billy club, if you hear alarms going off, I mean, we can't suspend reality here. We don't sort of just look at these two and ignore all the evidence around them. We don't expect a jury to do that. A jury might be able to do that, but a jury didn't do that in this case. So even assuming you have raised a sufficiency of evidence challenge, what's your best case that that is not sufficient? I submit that these two appellants are thus far the most innocent that have come before this court of appeals. Well, they may be, you know, less obviously guilty may be the better phrase, but that doesn't mean that they aren't guilty of being somewhere they weren't supposed to be. You're not innocent if you're somewhere you're not. If you were to come up here right now and stand up here at the dais right over me, looming over me, you could be perfectly innocent. You wouldn't break anything, not steal anything. You wouldn't even raise your voice. But you would be where you're not supposed to be, correct? Sure. You would be where you're not supposed to be. Correct. And you know that you're not supposed to be there. And that would be disruptive to my work, would it not? Of course. Okay. Let me just say, in a setting where a hundred other people have already done this in front of me, it becomes less clear whether or not it's a restricted area of property. Whether you're supposed to be there? Sir.  For a long period of time before they went in, right? Yes. At the Capitol? Yes, on the Capitol grounds area. So they saw that how the people got in was that they overpowered the police. And then they got in. And then they went in. So they just act like they walked in, you know, because everybody else was walking in and they didn't know that they weren't supposed to be there, et cetera, et cetera. They went in after they saw a mob push past the police and go in. And then they're like, okay, we're going to go in too. That's what a reasonable jury could find based on the evidence. And that's not consistent with innocent conduct or not violating this statute. It's consistent with violating this statute. Tell me why it isn't. If that's the evidence that the jury could have found. Let's put it this way. I believe the evidence in this case was that the Q6 were way down lower at the time, you know, the doors up above were breached. It was hundreds of yards away. So they did not really see how that happened. They did ultimately walk through an open door. They were inside the Capitol building for about ten minutes. So it would have been unreasonable for the jury to find that they knew that there was fighting going on and pushing past the police based on what the jury was told here. I don't believe there's any evidence that they saw any fighting. I don't believe that came into the trial in this case. I'd have to rack my brain a little bit, but I just don't recall it. Is there evidence that there were alarms going off? Sure. There were alarms going off. That they heard? I believe so. Yes. Yeah. Was there evidence of broken glass? Yes. Evidence of broken doors? I think perhaps. But I believe Jim Cusick took the witness stand and testified that his understanding was, you know, it was a chaotic moment in time and that there was a lot of things going on and that the officers that they did see were not saying get out, go away. In fact, there was some testimony that officers were fist bumping members of the crowd, et cetera. So it was a chaotic situation. What's the standard of our review on sufficiency of the evidence? How are we supposed to look at the evidence? Well, obviously you would look at the case in the light most favorable to the governments. The jury didn't have to credit a word of your client's testimony, right? That is correct. I see that my time has expired, but I would say that this falls under that Adderley. We cite the Tinker case, the Supreme Court case from 1969, and the Adderley case, where a legislative capital is assumed to have more First Amendment protection than other places. Of course, Tinker involved a public school. Adderley involved the grounds of a jail. These places are not known as public forums for free speech. All of that law says that legislative capitals are the fundamental reason for their existence, and so we have to recognize the give and take of that situation, that the U.S. Capitol is a place where people come to confront, to protest, to angrily, perhaps at times, let their voices be heard. Well, I think the distinction is between the Capitol grounds and inside the Capitol building when there are legislative proceedings underway. I mean, I assume you would agree that the public can't routinely walk in while Congress is trying to vote on measures and yell everything down and prevent business from going. I mean, to your client's credit, they didn't, at least on this record, as far as we know, break things or hurt anybody. That's to their credit and reflected in the charges in the sentence. But it remains that the inside – I think the difference is the inside the Capitol versus Capitol grounds. I mean, do you have a case that says inside the Capitol while legislative – maybe any time, but even certainly while legislative business is underway, it's a public forum? Inside. Yeah, and I think most people intuitively recognize that distinction. In the case of January 6th – The charge here is with what they did inside the Capitol, not outside. Yes, especially with regard to the counts three and four, yes. But I would say in the case of January 6th – I'm talking about your First Amendment claim. That's what I'm talking about here. Yeah. Obviously, there are greater First Amendment – there's a lot of case law, a lot of First Amendment rights outside, not so much inside. But in January 6th, it was a unique situation. There was a lot going on. There was a lot of chaos where I submit these boundaries were not that clear. People were going in and out. So people's behavior, a crowd's behavior can turn a non-public forum into a public forum? Is that your First Amendment argument? I actually think – I think so. Or if they were confused as to whether it was a public forum, that creates a First Amendment right? I'm just trying to understand then what your point is. I would say the confusion certainly – it's like a – Is there any case that allows confusion to take something that's not a public forum and make it a public forum? Confusion by the speaker? I'd have to think about that. I can imagine the consequences of a doctrine like that. Well, I think all – this is everyday life. Basketball games, NCAA championship games at the end where the first few people that jump onto the floor, the crowd, they're doing something wrong. But the second hundred people, not so much. And frankly, it becomes after a while. It becomes an unrestricted area. The referees themselves – Three wrongs make a right. The referees themselves – No, no. Surrender them. Really? Really? It's less – I mean, if something's wrong, it's wrong. Whether ten people – I thought we lived in a country where if you did something wrong and illegal, the fact that five people did it in front of you, or even a hundred people did it before you, doesn't suddenly make it legal. Is that your argument? It's a little bit like property rights, easements. There can be an easement in time. There's no easement on the Capitol – inside the Capitol. Full stop. Thank you so much. No, but your argument was it wasn't wrong anymore. Is that your argument? When the referees cede the field, they are essentially making it a non-restricted area. It's not the referee's field. They don't own it. Well, there's a difference between ceding and saying, oh, it's okay for you to be here, and moving aside because you've been overpowered, and the only way to stop would be to use deadly force or to escalate matters beyond what might be deemed sufficient or appropriate in the circumstance. We're ceding some time to you beyond the ten minutes you were given. It doesn't mean that you have a right to speak more than ten minutes, but we're giving you more than ten minutes. That's a very good example. I would submit that January 6th was such a unique event that there was this sort of almost popular sovereignty moment where the crowd was so large that the authorities, such as they were, did sort of, for those moments, unrestricted. Thank you so much. Any questions? Thank you very much. We'll give you a couple of minutes for rebuttal. May it please the Court. Dietrich Hill on behalf of the United States. The defendants did forfeit their sufficiency argument, but if the Court reaches it, this case is not distinguishable from Alford. There was more than sufficient evidence for a rational jury to conclude that the defendant's conduct was disorderly and disruptive when they entered the Capitol grounds and joined this disruptive mob, magnifying its disruptiveness and increasing chaos within the Capitol, which is what this Court held in Alford, is more than sufficient for a jury to conclude constitutes disorderly and disruptive conduct. What conduct did they engage in beyond entering and remaining? You have a separate count already for entering and remaining. And then if we're going to say was there any factual, what is the factual addition in their behavior that makes it disruptive? To be honest, Your Honor, I don't think there is much more, but in this context, entering and remaining as part of this mob, increasing the numbers of the mob, making it more difficult for Congress to continue its work. Congress, which had already... But even if they were the only two people who entered and remained and had to be removed before Congress could resume, so if there were no mob, it was just the two of them, would you agree that you could also charge disruptive conduct? Your Honor, I think it would be a jury question. No, but I'm not asking if that. I'm asking as a matter of law, do you have another element that makes it disruptive conduct? Because I assume you would have the same argument, they have to be removed before Congress could resume its work. I don't think there... I don't think as a matter of law we would need more. It's possible that that would also constitute disruptive or disorderly conduct. But again, I think the evidence would be much weaker, but it would still be a jury question as to whether that constituted disruptive or disorderly conduct under all the circumstances. Of course, that's not the case we have. As Alford held, the jury is entitled to look at all of the circumstances, which here made this entering and remaining fundamentally... It just seems like at some level this may be sort of double-counting on the enter and remain when you don't have any other conduct. I don't think you even had evidence that they yelled at anybody. No. There was some yelling, certainly on the grounds, that's recorded on their videos, but... That's not relevant to this charge.  Or at least not to the 5104. It could be relevant to the 1752, which is in the restricted area. But, no, frankly, as the Defendants' Counsel suggested, these defendants are relatively low on the scale of disruptive conduct, but so was Alford. And what this Court held is it may be the same conduct, but context matters. You don't need different conduct if it violates both statutes. With respect to the First Amendment claim, this Court held in Nassif that the interior of the Capitol is a non-public forum, and the government therefore has substantial latitude to regulate. In Nassif, this Court upheld a regulation that prohibited all demonstrating, picketing, and parading, acknowledging that that was somewhat over-inclusive, that that would prohibit some conduct that was not inherently disruptive to Congress. But the Court said, in a non-public forum like the Capitol, you don't need the most narrowly tailored regulation. That's acceptable. This regulation is more narrowly tailored than that. So almost a fortiori, it is a reasonable regulation. It prohibits only actually disruptive and actually disorderly conduct. With respect to their reply, I would just say that their intent argument is doubly forfeited. There's no sufficiency argument properly presented in the opening brief and nothing about intent. So there's certainly no reason for this Court to reach that, which is presented only in the reply. And with respect to Adderley, that's a case in which the Supreme Court rejected the First Amendment claim and upheld the conviction of the protesters. And as Your Honor suggested, the Supreme Court suggested that perhaps state legislative grounds would be a public forum under which different rules might apply. Everybody agrees that the U.S. Capitol grounds are also a public forum, but that's not what we have here on this as-applied First Amendment challenge to conduct within the Capitol. And it's clear that none of the charges pertain to what they did outside the Capitol building, outside the building? Well, certainly with respect to the First Amendment challenge, we look at as-applied to their conduct, all of their conduct, including their conduct within the building. I hesitate only because I think the jury could have concluded, even based on their conduct outside the building, that they had violated the statute, but they certainly didn't need to look at that because of their conduct within the building. Why would the jury under the First Amendment be allowed to consider what they said outside the building? There would be a different analysis as to whether the First Amendment protected the conduct outside the building, which is in a public forum. The government would have to meet a higher degree of scrutiny. But that's, again, I would say this is an as-applied challenge to their conduct within the building. Did the jury instructions permit the jury to consider acts that occurred outside of the Capitol building to be part of the actus reus, the body of the crime? I don't recall, Your Honor. I believe it did, but I can't say for sure. You mean if it did, wouldn't that be a problem? Not for the 1752 charges, which apply to the entire restricted area. What is it relevant to? Excuse me? I'm confused as to what their conduct outside the Capitol building, what charge you think that was relevant to because I had understood all these charges to pertain to their entry and presence inside the Capitol building. Am I wrong about that? The 1752 charges could also be supported anywhere within the restricted area, which included the immediate perimeter of the Capitol grounds. Okay, all right. You're not talking about marching up to the Capitol or anything like that, or before they came to the restricted area? Right, no. That's right. If there are no further questions, we would ask the government to affirm. Thank you. Mr. Roots, we'll give you two minutes. Thank you, Your Honor. You know, we pointed out in our brief the Tinker decision, which the government argues is not relevant. It directly involves a claim of disorderly conduct in a place that all people admit is not a traditional public forum for free speech. But a place where those students were lawfully, not only lawfully allowed, but probably lawfully required to be. Exactly. Right, and that's the difference here. Your speech was in a place that it was unlawful for them to be, and a jury could and did find that they were aware that they were not lawfully allowed to be there. So that, I don't know what to do. I don't see how Tinker... Well, Tinker involved conduct similar to the conduct in this case, which is standing in a place. No, standing in a place you're not allowed to be is very different from standing or wearing an arm badge in a place you are allowed to be. I mean, the point here is that it was their presence that was unlawful. No one argued about that in Tinker. Yes, you're correct. I will say that the application to this case is that a public school is a very controlled setting, just as the interior halls of the Capitol are, and there has to be maintenance of control. But the Supreme Court looked at the wearing of an armband and said, well, it has to be a substantial disruption to qualify as disorderly conduct or whatnot. And it's similar to our case where the accuser... So if they had prevented the teacher from teaching, that would have been different in Tinker, if the conduct had prevented the teachers from teaching. Sure.  Yeah. In this case, the accusers arrived after Congress had long ago... Any questions? ...recessed. Any questions? Thank you very much, Counselor. Thank you very much. Thank you so much. The case is submitted.
judges: Millett; Wilkins; Pan